Willmore F. Holbrow, III (SB# 169688)
bill_holbrow@bstz.com
James W. Ahn (SB#243335)
James_ahn@bstz.com
BLAKELY, SOKOLOFF, TAYLOR & ZAFMAN, LLP
12400 Wilshire Boulevard, Seventh Floor
Los Angeles, California 90025
Tel: (310) 207-3800

Attorneys for Plaintiff
SAKURA FINETEK U.S.A., INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| SAKURA FINETEK U.S.A., Inc., a California corporation,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>SCI GEN, INC., d/b/a SCIGEN, California corporation,<br><br>　　　Defendant. | **COMPLAINT FOR VIOLATIONS OF §43(A) OF THE LANHAM ACT, COMMON LAW TRADMARK INFRINGMENT AND STATUTORY UNFAIR COMPETITION**<br><br>**[Demand For Jury Trial]** |

Plaintiff SAKURA FINETEK U.S.A., INC. ("SAKURA"), for its complaint against SCI GEN, INC. ("SCIGEN"), alleges as follows:

## JURISDICTION, VENUE AND PARTIES

1. The Court has federal question jurisdiction of the Lanham Act claims for false advertising and trade dress infringement pursuant to 28 U.S.C. §1331 and supplemental jurisdiction of the related California state law claims for common law trademark infringement and unfair competition pursuant to 28 U.S.C. §1367.

2. The Court has personal jurisdiction over the parties, as Plaintiff Sakura has its headquarters in Torrance, and Defendant SCIGEN has a presence and conducts business out of which the claims herein arise within California and this District.

3. Venue is proper in this district under 28 U.S.C. §1391(a), in that the Defendant is subject to personal jurisdiction in this District and under 28 U.S.C. §1391(b) and (c) because a substantial part of the events giving rise to the claims occurred in this District.

4. SAKURA is a California corporation, headquartered at 1750 West 214th St., Torrance, Los Angeles County, California.

5. SCI GEN, INC., doing business as SCIGEN, is a California corporation located at 333 Gardena Blvd., Gardena, Los Angeles County, California.

## FACTS COMMON TO ALL CLAIMS

6. At least as early as 1986, SAKURA has been an original manufacturer and distributor of clinical pathology products sold in the United States and worldwide. Since that time, its products have become the industry standard in clinical pathology equipment and products, including histology, cryostat and cytology, tissue processors, stainers, automated coverslippers, microtomes,

laboratory specimen embedding systems, laboratory fixatives, and laboratory safety systems.

7. SAKURA's product line includes TISSUE-TEK®, CYTO-TEK® and TISSUE-TEK VIP® products, which also includes the ACCU-EDGE BLADE SYSTEMS®, TISSUE-TEK UNI-CASSETTE SYSTEMS®, TISSUE-TEK PARAFORM®, TISSUE-TEK® CRYO3®, TISSUE-TEK XPRESS® x Series Rapid Tissue Processors, TISSUE-TEK Auto TEC® Automated embedding systems, and TISSUE-TEK® FORMAGO® Formalin Safety System, among others. Its clinical pathology products have revolutionized the practice of clinical pathology, as its innovations have dramatically reduced specimen processing turnaround times, and have helped to standardize laboratory safety and processing procedures in the field.

8. At least as early as December, 1994, SAKURA first introduced its TISSUE-TEK® O.C.T. Compound to the U.S. market upon acquisition of such assets and rights and has been using continuously since then.

9. TISSUE-TEK® O.C.T. Compound is an embedding medium for frozen tissue specimens used to insure optimal cutting temperature ("O.C.T.") for such specimens. It is used to bind tissue to a specimen block and to surround and cover tissue specimens in preparation for sectioning before microscopic viewing.

10. SAKURA's container for its TISSUE-TEK® O.C.T. Compound incorporates unique features which comprise its trade dress, including the term TISSUE in large black font, a series of backslash markings circling the container, and the words "O.C.T. Compound" underneath the backslashes, again in large black font, followed by:

*Embedding Medium for Frozen Tissue Specimens to ensure Optimal Cutting Temperature (O.C.T.)*

*For In Vitro Diagnostic Use*

*Poison: Not for drug, food or household use*

*118 ml*

*(4 Fl. Oz)*

11.  SAKURA's container for its TISSUE-TEK® O.C.T. Compound is a clear bottle with a black cap, and features Sakura's unique identifier "4583" mark, and incorporates the Hazardous Materials Identification System ("HMIS") grid. The features described above constitute SAKURA's Trade Dress in its TISSUE-TEK® O.C.T. Compound product (hereinafter, the "TRADE DRESS").

12.  SAKURA originally began to use the numbers "4583" (hereinafter, the "MARK") on its TISSUE-TEK® O.C.T. Compound when the product was first introduced. "4583" is now recognized by the public to identify SAKURA as the source of TISSUE-TEK® O.C.T. Compound, as its customers identify the product by "4583" in the marketplace.

13.  SAKURA has advertised and displayed its TISSUE-TEK® O.C.T. Compound extensively in commerce, since at least as early as 2002, including over the internet, by providing it to research physicians and laboratory scientists, and through various print media.  It has expended considerable sums on its advertising and promotion of its product, and has generated a substantial amount of goodwill in the product and consumer awareness that SAKURA is the source of the product.

14.  On August 1, 1997,  SAKURA and Defendant SCIGEN entered into a supply agreement whereby SAKURA provided its specification and formulation to make the TISSUE-TEK® O.C.T. Compound to SCIGEN to enable SCIGEN to make the product for SAKURA. SAKURA gave notice of termination of the supply agreement on May 23, 2007.  The termination became effective September 30, 2007.  SAKURA conferred no rights of any kind to Defendant SCIGEN regarding

SAKURA's MARK or its trade dress either before termination of the supply agreement, or post-termination.

15. In 2015, Defendant SCIGEN began to market a product to compete with SAKURA's TISSUE-TEK® O.C.T. Compound, called SCIGEN TISSUE PLUS O.C.T. Compound.

16. SCIGEN's product features the term TISSUE in large black font, a series of backslash markings circling the container, the words "O.C.T. Compound" underneath the backslashes, again in large black font, followed by the same terms featured on SAKURA's product:

*Embedding Medium for Frozen Tissue Specimens to ensure Optimal Cutting Temperature (O.C.T.)*

*For In Vitro Diagnostic Use*

*Poison: Not for drug, food or household use*

*118 ml*

*(4 Fl. Oz)*

17. SCIGEN's container for its TISSUE PLUS O.C.T. Compound also incorporates a clear bottle with a black cap, features the "4583" Mark, and incorporates the Hazardous Materials Identification System ("HMIS") grid.

18. SCIGEN's design choices for its TISSUE PLUS O.C.T. Compound are identical to SAKURA's trade dress for its TISSUE-TEK® O.C.T. Compound, as SCIGEN used the exact same clear container and black cap combination, backslashes circling the container, the exact same text and color on its label, and the identical placement of the HMIS grid on its product's label.

19. SCIGEN utilizes SAKURA's unique 4583 mark on its packaging, when its inclusion of such number on its product label is unnecessary.

20. Defendant SCIGEN has offered and continues to offer its TISSUE PLUS O.C.T. Compound for sale through the same channels to the same customers and distributors as SAKURA, and on information and belief SCIGEN is erroneously

informing potential customers and distributors that the SCIGEN product is the same as SAKURA's product.

21. Sakura has sold TISSUE-TEK® O.C.T. Compound extensively, throughout the world, and, since before the offending activities of Defendant complained herein, had developed a wide and favorable reputation under the MARK and its TRADE DRESS.

22. Defendant SCIGEN's use in commerce of SAKURA's TRADE DRESS in connection with its TISSUE PLUS O.C.T. Compound is likely to and has caused confusion, deception and mistake in the minds of the public with respect to the source and origin of SAKURA's products.

23. Defendant SCIGEN's use in commerce of SAKURA's MARK in connection with its TISSUE PLUS O.C.T. Compound is likely to cause confusion, deception and mistake in the minds of the public with respect to the source and origin of SAKURA's products.

24. In February 2016, Sakura began marketing and selling its TISSUE-TEK® FormaGO® Formalin Safety System. SAKURA's FormaGO® line of products is used by laboratories to promote user safety and environmental safety in the disposal of formalin. SAKURA's TISSUE-TEK® FormaGO® user safety products include Absorption Pads, Absorption Wipes, and Absorption Granules; its environmental safety products include the Formalin Neutralizer, Formaldehyde Analysis Kit and Formalin Neutralizer Container.

25. SAKURA competes directly with SCIGEN in the formalin neutralizer and related product market, through SCIGEN's manufacture, sales and marketing of the SCIGEN NEUTRALEX products.

26. Formalin is primarily used in pathology laboratories for tissue fixation, or as a preservative holding solution for fixed tissues or organ specimens. It is the most common form of formaldehyde found in laboratories, and is typically made

6

from a mixture of 37-40% formaldehyde, water, and usually 10% methanol. This mixture is commonly known as "Ten percent formalin".

27. Due to potential health hazards associated with formaldehyde, the disposal of formalin into the waste water system is subject to various federal, state and local regulations. Improper disposal of formalin presents health and safety concerns when handled incorrectly, and raises environmental concerns and risk of legal liability when disposed incorrectly. A distinction is made in Federal regulations between "used" and "unused" formalin when any disposal action is planned.

28. "Used" Ten Percent formalin (i.e. the working solution) may be poured down sink drains and then flushed through plumbing traps with significant amounts of water. Disposal of used formalin to a sanitary sewer is permissible from a regulatory perspective because the solution has been used for its intended purpose, and at that stage, it is no longer considered a commercial chemical product such that it would fall under the Federal Resource Conservation and Recovery Act ("RCRA"). A spent solution does not contain the same constituents as the original unused solution, as it has changed in nature from having been used, and as such, does not meet the criteria stated in the RCRA regulations.

29. Used formalin working solution is not a hazardous waste because it is not listed under the RCRA and it is not characteristic of hazardous waste. Specifically, it does not have the RCRA characteristic of ignitabilty, corrosivity, or toxicity, as required for designation as a hazardous waste.

30. Unused formalin and unused ten percent formalin solutions are both considered commercial products, and fall within the regulations of the RCRA. Both contain formaldehyde as the active ingredient. The regulations that implement the RCRA identify unused formalin as a toxic waste, as identified by the U.S. Environmental Protection Agency ("EPA").

31. Federal regulations allow specified users under certain conditions to treat their own spent formalin waste with products such as SAKURA's FormaGO® product line, and several other commercially available formalin neutralizing products, without obtaining a permit and without being regulated as a waste disposal facility.

32. State and local regulations allow sewer disposal treated formalin waste if local waste-water treatment plant ("WWTP") authorities and regulations are satisfied. For example, California allows the treatment of hazardous wastes without a permit generated in laboratories when relatively small quantities of hazardous chemicals are used and the laboratory is associated with education, research, chemical analysis, clinical testing, and product development.

33. The California Department of Toxic Substances Control categorizes pathology laboratories as clinical testing facilities. Treatment of laboratory waste, such as 10 percent formalin, may be disposed without a permit, as long as the laboratory waste treatment methods have been published in either a peer-reviewed scientific journal or the National Research Council's best practices publication.

34. On or about January 7, 2016, defendant SCIGEN began falsely advertising that its NEUTRALEX formalin neutralizer product was sold pursuant an exclusive right granted to it through certification issued through the California Department of Toxic Substance Control ("DTSC"). A true and correct copy of its advertisement is attached hereto as "Exhibit A".

35. SCIGEN's NEUTRALEX advertisement contains additional false statements, namely, that "If [a product] is "Not Neutralex—you need a permit", "If you are using any product other than NEUTRALEX, you must apply for a Hazardous Waste Treatment Disposal Permit", "If it is not certified by the EPA – You Must have a permit!" and "The EPA seal allows treatment of hazardous formalin waste without having to obtain an EPA Hazardous Waste Treatment

Permit. Formalin treated by this certified process becomes a nonhazardous material that can be legally poured down the drain."

36. SCIGEN's NEUTRALEX advertisements are false, misleading and unsubstantiated.

37. The EPA does not issue federal certifications for formalin neutralizers.

38. California's DTSC issued certifications under the California Environmental Technology Certification Program. The certification process was voluntary and all costs for testing certification were paid by the applicant. Certification is not required independently for the safe disposal of formalin in California or any other state. Additionally the DTSC makes no express or implied warranties as to the performance of any manufacturer's certified product, as the end user is solely responsible for complying with the applicable federal, state and local regulatory requirements. Due to a budget shortfall, the DTSC has stopped accepting any new applications for DTSC certifications.

39. The DTSC certification does not give SCIGEN an exclusive right to treat formaldehyde without a permit or advise potential customers that they can dispose of the waste without a permit only if they use its NEUTRALEX product. SCIGEN continues to advertise this to its consumers, although its statements are false. There are several ten percent formalin neutralizers on the market, including SAKURA's, designed to effectively treat this type of waste.

40. SCIGEN intentionally continues to make unqualified claims about its NEUTRALEX product in order to deceive consumers into purchasing its product instead of competing products, such as SAKURA's FORMAGO® product line.

41. SCIGEN's false advertising campaign must be stopped to prevent further consumer deception and irreparable harm to SAKURA.

42. SAKURA has and/or will suffer damages and Defendant SCIGEN has made profits that are the proximate result of Defendant's conduct complained of herein. The amount of said damages and profits are presently unknown.

# FIRST CLAIM FOR RELIEF

## VIOLATION OF 15 U.S.C. §1125(a)(1) – False Advertising

### (Section 43(a) of the Lanham Act)

43. Paragraphs 1 through 42 above are incorporated as though set forth at length.

44. Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. 1125(a)(1)(B), prohibits, *inter alia*, any "false or misleading description of fact, or false or misleading representation of fact which…in commercial advertising or promotion, misrepresents the nature, characteristics [or] qualities…of…goods, services, or commercial activities."

45. SCIGEN's advertising campaign for its NEUTRALEX product conveys a false message to consumers by grossly misstating the import of the certification issued to it by the DTSC, and necessarily implies that SCIGEN has an exclusive right to treat formaldehyde without a permit.

46. SCIGEN's advertisement also conveys the false message that they can dispose of formaldehyde waste without a permit only if they use its NEUTRALEX product.

47. SCIGEN's advertisement that "No Permit Needed" by purchase and use of its NEUTRALEX product is false and misleading because there may be some local or facility-specific regulations which require a permit for the disposal of formaldehyde products.

48. SCIGEN's assertion that its DTSC certification is from the "EPA" is also false and misleading, as it implies that the California's DTSC certification has national implications, when its value, if any, is limited to the state of California.

49. SCIGEN's false and misleading claims have appeared in internet advertising, have been sent via email and have appeared in interstate commerce.

50. SCIGEN's false and misleading claims have deceived, and will continue to deceive, a substantial portion of SAKURA's target audience for its FormaGO® product line.

51. SCIGEN's false and misleading claims regarding its NEUTRALEX product are material to consumers' purchasing decisions.

52. SCIGEN's misrepresentations has and likely will continue to cause SAKURA to suffer damages to its business in the form of lost sales, profits, and damage to its reputation and goodwill with its customers.

53. As a result of SCIGEN's intentional, deliberate and willful misrepresentations, SAKURA and the public have been injured. Unless SCIGEN is enjoined by this court and ordered to retract and correct its false and misleading advertisements and statements, SCIGEN's statements will continue to mislead the public and cause SAKURA to suffer a loss of consumer confidence, sales, profits, and goodwill, along with the cost of remedial corrective advertising, much of which loss is, and will be, irreparable. The exact nature and extent of SAKURA's injury cannot be ascertained at this time.

## SECOND CLAIM FOR RELIEF
(False Designation of Origin)

54. SAKURA hereby incorporates by reference the allegations contained in paragraphs 1 through 53 as though fully set forth herein.

55. The SAKURA TRADE DRESS was originated by SAKURA, has been exclusively used by SAKURA since at least as early as 2002 and is inherently distinctive and non-functional.

56. By virtue of SAKURA's undisputed first use, advertising and promotion of the SAKURA TRADE DRESS, the latter has established the presence of secondary meaning identifiable with SAKURA's product.

57. Defendant, without the consent and authorization of SAKURA, has adopted and utilized all the essential elements of the SAKURA TRADE DRESS.

58. Defendants' misappropriation of SAKURA's TRADE DRESS is likely to cause purchasers in interstate commerce to be confused, misled and deceived between SAKURA's TISSUE-TEK® O.C.T. Compound and SCIGEN's TISSUE PLUS O.C.T. Compound.

59. Purchasers have also been given the false impression by Defendant that the trade dress, style and presentation of SCIGEN's TISSUE PLUS O.C.T. Compound was originally developed by Defendants and not SAKURA, and that its product is the same as SAKURA'S product and/or associated with SAKURA's, thereby diluting SAKURA's marketing advantage. The likelihood of confusion is compounded by the fact that SCIGEN previously manufactured the product for SAKURA and makes statements regarding same on its website.

60. Thus, the activities of Defendant alleged heretofore constitute the use in commerce of false designations of origin and false description and representations of fact as prescribed under §43(a) of the Lanham Act, and have damaged SAKURA in an amount not yet subject to determination.

## THIRD CLAIM FOR RELIEF
(False Designation of Origin)

61. SAKURA hereby incorporates by reference the allegations contained in paragraphs 1 through 60 as though fully set forth herein.

62. The MARK was originated by SAKURA, has been exclusively used by SAKURA and/or its predecessor in interest, since at least as early as 1994, and is inherently distinctive and non-functional.

63. By virtue of SAKURA's undisputed first use, advertising and promotion of the MARK, the latter has established the presence of secondary meaning identifiable with SAKURA's product.

64. Defendant, without the consent and authorization of SAKURA, has adopted and utilized the MARK.

65. Defendants' misappropriation of the MARK is likely to cause purchasers in interstate commerce to be confused, misled and deceived about the source of SCIGEN's TISSUE PLUS product and/or its connection or affiliation with SAKURA.

66. Thus, the activities of Defendant alleged heretofore constitute the use in commerce of false designations of origin and false description and representations of fact as prescribed under §43(a) of the Lanham Act, and have damaged SAKURA in an amount not yet subject to determination.

## FOURTH CLAIM FOR RELIEF
(Common Law Trademark Infringement)

67. SAKURA hereby incorporates by reference the allegations contained in paragraphs 1 through 66 as though fully set forth herein.

68. Defendants' conduct constitutes common law trademark infringement.

69. SAKURA is now suffering irreparable harm, and will continue to suffer such harm if the infringing acts of Defendant are not enjoined, and it has no adequate legal remedy for such injury.

70. Defendant's conduct is deliberate and willful.

## FIFTH CLAIM FOR RELIEF
(Statutory Unfair Competition)

71. SAKURA incorporates by reference the allegations contained in paragraphs 1 through 70 as though fully set forth herein.

72. Defendant's conduct constitutes unfair competition under Business & Professions Code §17200, et seq. SAKURA is now suffering irreparable harm, and will continue to suffer such harm if the infringing acts of Defendant are not enjoined, and SAKURA has no adequate legal remedy for such injury.

73. Defendants' conduct is deliberate and willful.

**PRAYER FOR RELIEF**

WHEREFORE, SAKURA prays that this court enter judgment as follows:

1. That Defendant and its officers, agents, servants, employees and attorneys, and all persons acting in concert or participation with them or with any of the foregoing acts be enjoined permanently from:

    a. Offering, soliciting, advertising, or selling any products or services under any mark, symbol, logo, or other indicia that include or consist of the MARK or any colorable imitation thereof;

    b. Offering, soliciting, advertising, or selling any products under any mark, name, symbol, logo, trade dress or design which is likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that Defendant's products or services originate from SAKURA, or that Defendant or its products are authorized by SAKURA or are endorsed by SAKURA or are sponsored by SAKURA, or are connected in some way with SAKURA, SAKURA's MARK or SAKURA's TRADE DRESS;

    c. Disseminating any advertising, marketing or promotional statements, whether made by expressly or by implication, that in any way says or suggests that "If [a product] is "Not Neutralex—you need a permit", "If you are using any product other than NEUTRALEX, you must apply for a Hazardous Waste Treatment Disposal Permit", "If it is not certified by the EPA – You Must have a permit!", and "The EPA seal allows treatment of hazardous formalin waste without having to obtain an EPA Hazardous Waste Treatment Permit.  Formalin treated by this certified process becomes a nonhazardous material that can be legally poured down the drain.";

    d. Using false designations or engaging in any act or series of acts which, either alone or in combination, constitutes deceptive or unfair methods of competition with SAKURA and from otherwise interfering with, or injuring SAKURA's trademark or the goodwill associated therewith;

14

  2. That Defendant be ordered to deliver to SAKURA for destruction, all signs, advertisements, literature and any other promotional material which bears the confusingly similar SCIGEN mark or any other mark confusingly similar to SAKURA's MARK or TRADE DRESS;

  3. That Defendant be ordered to immediately destroy all SAKURA's products which feature trade dress characteristics confusingly similar to SAKURA's MARK or TRADE DRESS;

  4. That Defendant issue appropriate corrective advertising and literature;

  5. That Defendant account for and pay to SAKURA, all gains, profits and savings derived from their improper conduct;

  6. That SAKURA recover its damages according to proof and that Defendant account to SAKURA for all profits received by defendant from the wrongful conduct pleaded herein, and that such damages and profits be trebled under 15 U.S.C. §1117;

  7. That SAKURA be awarded its costs, expenses and reasonable attorneys' fees; and,

  8. For such other relief as the court deems proper.

Dated: February 8, 2016  /s/Willmore F. Holbrow, III
            Willmore F. Holbrow, III
            James Ahn
            BLAKELY, SOKOLOFF, TAYLOR & ZAFMAN, LLP
            12400 Wilshire Boulevard, Suite 700
            Los Angeles, California 90025
            Attorneys for Plaintiff
            SAKURA FINETEK U.S.A., INC.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all claims triable by jury.

Dated: February 8, 2016

        /s/Willmore F. Holbrow, III
        Willmore F. Holbrow, III
        James Ahn
        BLAKELY, SOKOLOFF, TAYLOR & ZAFMAN, LLP
        12400 Wilshire Boulevard, Suite 700
        Los Angeles, California 90025
        Attorneys for Plaintiff
        SAKURA FINETEK U.S.A., INC.